**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| WILLIAM CARTER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COLONY CAPITAL, INC., *et al.* <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:16-cv-03282-JFM |
| JACK BOOTHE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NORTHSTAR REALTY FINANCE CORP., *et al.* <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:16-cv-03742-JFM |
| CINDY KESSLER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NORTHSTAR ASSET MANAGEMENT GROUP, INC., *et al.* <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:16-cv-03745-JFM |

**PLAINTIFFS' JOINT MEMORANDUM OF LAW IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

**BROWER PIVEN, A**
**Professional Corporation**
Charles J. Piven
Yelena Trepetin
1925 Old Valley Road
Stevenson, MD 21153
Tel: (410) 332-0030
Fax: (410) 685-1300

*Attorneys for Plaintiffs William Carter,*
*Jack Boothe and Cindy Kessler*


Nadeem Faruqi
James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Plaintiff Jack Boothe*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 971-1341

*Attorneys for Plaintiff William Carter*


Guri Ademi
Shpetim Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Ave.
Cudahy, WI 53110
Tel: (414) 482 -8000
Fax: (414) 482-8001

*Attorneys for Plaintiff Cindy Kessler*

# TABLE OF CONTENTS

STATEMENT OF RELIEF REQUESTED .......................................................................2

I. FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

    A. Nature of the Litigation ................................................................2

    B. The Parties Resolve the Actions .................................................5

    C. Discovery in the Actions .............................................................6

II. TERMS OF THE PROPOSED SETTLEMENT ....................................................7

    A. The Supplemental Disclosures ....................................................7

        1. The Corrective Disclosures Provided a Substantial Benefit and Were Material ..................................................................................8

        2. Financial Analysis Disclosures ........................................9

            i. Colony Capital Financial Projections ..................9

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...........................................................................................10

    A. Standard for Preliminary Approval of Class Action Settlement...............10

    B. The Settlement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved............................................................10

IV. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER ...........................................................................................12

    A. The Proposed Settlement Classes Satisfy Rule 23(a) of the Federal Rules of Civil Procedure............................................................12

    B. The Proposed Settlement Classes Satisfy Rule 23(b) of the Federal Rules of Civil Procedure............................................................14

V. THE PROPOSED NOTICE TO THE CLASS MEMBERS IS ADEQUATE ......15

VI. PROPOSED SCHEDULE OF EVENTS.............................................................16

VII. CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................13

*Bern-Shaw Ltd. P'ship v. Mayor & City Council of Baltimore,*
    377 Md. 277 (2003) ...............................................................................8

*Brodsky v. Hull,*
    196 Md. 509 (1950) ................................................................................8

*Calderon v. GEICO Gen. Ins. Co.,*
    279 F.R.D. 337 (D. Md. 2012) ...............................................................12

*In re Checking Account Overdraft Litig.,*
    275 F.R.D. 666 (S.D. Fla. 2011) ............................................................13

*David P. Simonetti Rollover IRA v. Margolis,*
    No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) .....................11

*Deiter v. Microsoft Corp.,*
    436 F.3d 461 (4th Cir. 2006) .................................................................13

*Gilmartin v. Adobe Res. Corp.,*
    C.A. No. 12467, 1992 Del. Ch. LEXIS 80 (Del. Ch. Apr. 6, 1992) ......................9

*Gunnells v. Healthplan Servs.,*
    348 F.3d 417 (4th Cir. 2003) .................................................................12

*Hudson v. Prime Retail, Inc.,*
    No. 24-C-03-5806, 2004 Md. Cir. Ct. LEXIS 26 (Md. Cir. Ct. Apr. 1, 2004) ..........8

*Lott v. Westinghouse Savannah River Co.,*
    200 F.R.D 539 (D.S.C. 2000) ................................................................15

*In re Netsmart Techs., Inc. S'holders Litig.,*
    924 A.2d 171 (Del. Ch. 2007) ......................................................9, 10, 11

*Olvera-Morales v. Int'l Labor Mgmt. Corp.,*
    246 F.R.D. 250 (M.D.N.C. 2007) ...........................................................14

*In re PNB Holding Co. S'holders Litig.,*
    Consol. C.A. No. 28-N, 2006 Del. Ch. LEXIS 158, (Del. Ch. Aug. 18, 2006) ......9, 10

*In re Pure Res., Inc. S'holders Litig.,*
    808 A.2d 421 (Del. Ch. 2002) .................................................................9

*S.C. Nat'l Bank v. Stone*,
 139 F.R.D. 335 (D.S.C. 1991) ............................................................................10

*In re Schering-Plough/Merck Merger Litig.*,
 No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 26, 2010)............14, 15

*Shenker v. Laureate Educ., Inc.*,
 411 Md. 317 (2009) ...........................................................................................8

*Stroud v. Grace*,
 606 A.2d 75 (Del. 1992) ...................................................................................10

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
 No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012) ...................10

*TSC Indus. v. Northway, Inc.*,
 426 U.S. 438 (1976)............................................................................................8

## Other Authorities

Fed. R. Civ. P. 23 .........................................................................................13, 14, 15

Plaintiffs William Carter, Cindy Kessler and Jack Booth ("Plaintiffs") on behalf of themselves and on behalf of a class of stockholders of Colony Capital, Inc. ("Colony Capital"), a class of stockholders of NorthStar Asset Management Group Inc. ("NSAM"), and a class of stockholders of NorthStar Realty Finance Corp. ("NRF") respectively, by their undersigned attorneys, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of the Stipulations of Settlements ("Stipulation")[1] in the above-captioned consolidated actions.[2]   As described below, plaintiffs William Carter, Cindy Kessler and Jack Booth each commenced a separate action regarding the Colony Capital, NorthStar Asset Management Group Inc. and NorthStar Realty Corp. Transaction on behalf of shareholders for each of those entities, asserting claims under Section 14(a) of the Securities Exchange Act of 1934. Although separate actions were filed on behalf of different shareholder classes, the claims are related, plaintiffs coordinated their efforts, and the relief obtained addressed claims in each action. Consequently, the plaintiffs in the three actions are seeking approval of this proposed settlement on a joint basis.[3]

---

[1]     The Stipulations are attached as Exhibit 1 - 3 (*see infra* n.3) to the Declaration of Yelena Trepetin in Support of Plaintiffs' Unopposed Joint Motion for Preliminary Approval of Class Action Settlement (the "Trepetin Decl.").

[2]     While Defendants do not necessarily agree with the statements and positions set forth herein, Defendants have stipulated to the relief requested herein – the entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"). Thus, the relief requested herein is unopposed by stipulation.

[3]     Since the cases are not consolidated, this Joint Motion for Preliminary Approval of Class Action Settlements is being filed in each of the above-captioned actions, with the Stipulation of Settlement that resolved each of these cases, along with the accompanying exhibits including, Exs. 1-3, the Stipulations of Settlements, and Ex. A, the Supplemental Disclosures, Ex. B, the Proposed Preliminary Notice Orders, Ex. C, Proposed Class Notices, and Ex. D, Proposed Orders and Final Judgements. The substantive terms of each of these documents is the same and have been revised only to reflect the difference in parties involved.

## STATEMENT OF RELIEF REQUESTED

Plaintiffs hereby move that the Court enter an order, Exhibit B of the Stipulation ("Notice Order") (*see supra* n.3): (1) preliminarily certifying a non-opt out Class for the purposes of settlement only; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the settlement to the Class; and (4) scheduling a final settlement hearing for the Court to consider whether to approve the settlement as fair and reasonable. The grounds for the requested relief, as set out below, are that each of the required elements for class certification for settlement purposes exists, and the Settlement meets the criteria for preliminary approval. Based on the foregoing, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the Proposed Order submitted herewith.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Nature of the Litigation

On June 2, 2016, Colony Capital, NorthStar Asset Management Group Inc. ("NSAM"), NorthStar Realty Corp. ("NRF"), and certain other parties, entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which (among other things) Colony Capital, NSAM, and NRF, agreed to combine in an all-stock merger of equals (the "Colony NorthStar Transaction," or "Transaction") that would result in the creation of a combined company, Colony NorthStar, Inc. ("Colony NorthStar"). As part of the Colony NorthStar Transaction, the class A and class B common stockholders of Colony Capital received 1.4663 shares of Colony NorthStar class A or class B common stock, respectively. Common stockholders of NRF received 1.0996 shares of Colony NorthStar class A common stock for each share of NRF common stock they owned. Common stockholders of NSAM received 1.000 shares of Colony NorthStar class A common stock for each share of NSAM common stock they owned. Holders of each series of

preferred stock of Colony Capital or NRF received one share of a series of preferred stock of Colony NorthStar with substantially the same terms for each share of Colony Capital or NRF preferred stock they own.

On July 28, 2016, Colony NorthStar, a Maryland subsidiary of NSAM, filed a registration statement on Form S-4 ("Registration Statement") with the Securities and Exchange Commission ("SEC") that included a joint proxy statement/prospectus of Colony Capital, NSAM, and NRF which, among other things, (i) summarized the Merger Agreement, (ii) provided an account of the events leading up to the execution of the Merger Agreement, (iii) stated that the Colony Capital, NSAM, and NRF boards of directors each determined that the Colony NorthStar Transaction was in the best interests of their respective stockholders and recommended the Colony NorthStar Transaction for approval by their respective stockholders, and (iv) summarized the valuation analyses and fairness opinions by Bank of America Merrill Lynch ("Bank of America"), the financial advisor to Colony's board of directors; Goldman, Sachs & Co., ("Goldman"), the financial advisor to NSAM's board of directors, Evercore Group L.L.C. ("Evercore"); the financial advisor to NSAM's special committee of independent directors, and UBS Securities LLC ("UBS"), the financial advisor to NRF's special committee of independent directors; which preliminary joint proxy statement/prospectus was amended and supplemented on September 15, 2016, October 17, 2016, and November 14, 2016 (as so amended and supplemented, the "Proxy Statements").

On September 29, 2016, William Carter filed the Colony Capital Action in the United States District Court for the District of Maryland on behalf of himself and the other public shareholders of Colony Capital, alleging, among other things, that Defendants violated Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9

promulgated thereunder by soliciting stockholder votes with the Proxy Statements that the Colony Plaintiff alleged were false and/or misleading, and that the Individual Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

On November 18, 2016, Cindy Kessler (the "NSAM Plaintiff"), on behalf of herself and the other public shareholders of NSAM, filed a putative class action entitled *Cindy Kessler v. NorthStar Asset Management Group, Inc., et al.,* Case No. 16-cv-03745 (the "NSAM Action"), against NSAM, David T. Hamamoto, Judith A. Hannaway, Albert Tylis, Stephen Cummings, Oscar Junquera, Justin Metz, Wesley Minami, and Louis J. Paglia (the "Individual NSAM Defendants," and together with NSAM, the "NSAM Defendants"), alleging that the NSAM Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by soliciting NSAM stockholder votes with the Proxy Statements that the NSAM Plaintiff alleged were false and/or misleading, and that the Individual NSAM Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

On November 18, 2016, Jack Boothe (the "NRF Plaintiff"), on behalf of himself and the other public shareholders of NRF, filed a putative class action entitled *Jack Boothe* v. *NorthStar Realty Finance Corp., et al.*, Case No. 16-cv-03742 (the "NRF Action," and together with the Colony Capital Action and the NSAM Action, the "Actions"), against NRF, David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr (the "Individual NRF Defendants," and together with NRF, the "NRF Defendants"),

alleging that the NRF Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by soliciting stockholder votes with the Proxy Statements that the NRF Plaintiff alleged were false and/or misleading, and that the Individual NRF Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

On November 15, 2016, counsel for the Colony Plaintiff proffered a written demand to counsel for Defendants seeking the dissemination of certain additional information regarding the Colony NorthStar Transaction, which demand thereafter was joined by the NSAM Plaintiff and the NRF Plaintiff (together with the Colony Plaintiff, the "Plaintiffs") and subsequently, counsel for the three Plaintiffs listed above and counsel for the Defendants in those cases engaged in joint negotiations concerning the terms to settle the Actions.

On November 29, 2016, the Colony Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), which asked the Court to enjoin the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

The Court scheduled a hearing on the Motion for December 1, 2016 at 4:00 p.m. (the "December 1 Hearing").

**B.      The Parties Resolve the Actions**

After the December 1 Hearing was scheduled, the parties engaged in extensive, arm's-length negotiations regarding potential terms to settle the three Actions.  On December 9, 2016, counsel to the parties in the Actions reached an agreement on the supplemental disclosures (the "Supplemental Disclosures") that the counsel for the Colony Plaintiff demanded, and which demand was joined in by NSAM Plaintiff's counsel and NRF Plaintiff's counsel.  Colony Capital

agreed to disseminate the Supplemental Disclosures to Colony Capital shareholders on December 9, 2016. The Supplemental Disclosures formed the basis for a tentative settlement of the Actions, as reflected in a Memorandum of Understanding dated December 9, 2016 ("MOU"). Defendants acknowledge that the Supplemental Disclosures were filed with the SEC and issued to shareholders as a direct result of the prosecution of class claims in the Actions.

On December 9, 2016, Colony Capital disseminated the Supplemental Disclosures to Colony Capital shareholders pursuant to the MOU. Also on December 9, 2016, NSAM and NRF each filed the same disclosures with the SEC.

On December 20, 2016, at a special meeting of the shareholders of Colony Capital, the holders of the majority of the outstanding shares of Colony Capital voted to approve the Colony NorthStar Transaction.

On January 10, 2017, Colony Capital filed Articles of Merger with the Department of Assessments and Taxation of the State of Maryland, pursuant to which Colony Capital was merged into Colony NorthStar, a Maryland corporation.

## C.    Discovery in the Actions

Pursuant to the terms of the MOU, counsel for Plaintiffs have conducted an investigation to confirm the potential settlement terms are fair and reasonable to stockholders, that included, among other things, a review of publicly available documents related to the Transaction, non-public documents produced to Plaintiffs by Defendants, and taking the depositions of Colony Capital Director John Somers; Cavan Yang, a representative of Bank of America; NRF Director and special committee member Charles Schoenherr; Alan Felder, a representative of UBS; NSAM Director and special committee member Justin Metz; and Keith Wetzel, a representative of Goldman.

Through the discovery process, Plaintiffs' Counsel were able to make the determination that the risk of continued litigation was outweighed by the benefit to stockholders provided by the Supplemental Disclosures, and the confirmatory discovery Plaintiffs' Counsel conducted indicated that the Settlement is fair, reasonable, adequate and in the best interests of the Class.

## II.    TERMS OF THE PROPOSED SETTLEMENT

### A.    The Supplemental Disclosures

On December 9, 2016, in consideration for the full and final settlement and release of all Settled Claims and the dismissal with prejudice of the Actions, and the other consideration set forth in the Stipulation, Colony Capital agreed to provide, and did provide, the Supplemental Disclosures in the Form 8-K Current Report filed with the SEC on December 12, 2016.  *See* Stipulation, Exhibit A (*see supra* n.3).  Defendants have acknowledged that the Supplemental Disclosures were made in response to the prosecution and settlement of the Actions.  Stipulation ¶ I.  The terms of the Settlement were negotiated at arm's-length by counsel with extensive experience and expertise in stockholder class action litigation.[4]  The Supplemental Disclosures directly address Plaintiffs' claims by clarifying and providing supplemental information to Settlement Class Members, which Plaintiffs considered important in order to allow Colony Capital stockholders to make a more fully informed decision regarding the Merger.  The Disclosures provided additional information concerning, *inter alia*:

- The inputs and assumptions underlying the financial analyses conducted by Bank of America, Goldman, and UBS (collectively, "Financial Advisors") prior to issuing their fairness opinions to Colony Capital, NSAM and NRF, respectively; and

---

[4]    Firm resumes of Brower Piven, A Professional Corporation, Monteverde & Associates PC, Faruqi & Faruqi, LLP and Ademi & O'Reilly, LLP are attached as Exhibits 4 – 7 to the Trepetin Declaration.

- the projected financial information for Colony Capital, including management's net income forecasts and projections from 2016 to 2018, as well as a reconciliation of non-GAAP financial measure "Core FFO" to GAAP financial measure "Net Income."

*See* Stipulation, Exhibit A (*see supra* n.3).  The significant disclosure benefits secured far outweigh the uncertainties and the high costs of continued litigation and appeal.

### 1. The Corrective Disclosures Provided a Substantial Benefit and Were Material

Plaintiffs alleged that the Registration Statement failed to provide stockholders with crucial, material information regarding the Merger.  Under Maryland law, directors owe a clear duty of candor to their stockholders in the context of a merger transaction.  *See Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 337 (2009).  This duty of candor means that directors owe a duty to disclose to stockholders material information within the directors' control regarding transactions on which the stockholders will vote.  *Hudson v. Prime Retail, Inc.*, No. 24-C-03-5806, 2004 Md. Cir. Ct. LEXIS 26, at *37 (Md. Cir. Ct. Apr. 1, 2004).  Information is considered material when its existence or nonexistence is a matter to which a reasonable person would attach importance in determining his or her choice of action in the transaction.  *Brodsky v. Hull*, 196 Md. 509, 515-16 (1950); *see also TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.").  The standard of materiality does not require proof that the disclosure of omitted information would cause a reasonable investor to change his mind, only that the "omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.*; *see also Bern-Shaw Ltd. P'ship v. Mayor & City Council of Baltimore*, 377 Md. 277, 290 (2003) ("[A] fact is material if it is of legal consequence to the determination of the issues in the case, which are dependent upon the pleadings and the substantive law.").

## 2.    Financial Analysis Disclosures

The Financial Advisors conducted various financial analyses in determining that the Merger was fair from a financial point of view.  As a result of Plaintiffs' Counsel's efforts, the Supplemental Disclosures contain highly pertinent, and previously undisclosed material information regarding the analyses conducted by the Financial Advisors and relied upon by the Boards of Colony, NRF and NSAM in approving the Merger.

As a general rule:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the board as to how to vote . . . rely.

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203-04 (Del. Ch. 2007) (internal quotation marks omitted) (footnote omitted); *see also In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) ("The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttress that result.").  "[I]nvestment bankers' analyses . . . usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer." *Pure Res.*, 808 A.2d at 449.

### i.  Colony Capital Financial Projections

With respect to the financial projections contained in the Registration Statement and relied on by Colony Capital's Board in recommending the Transaction to Colony's shareholders, "it is axiomatic that the fairness of the consideration offered in a merger or tender offer is material to a shareholder considering whether to vote in favor of the transaction." *Gilmartin v. Adobe Res. Corp.*, C.A. No. 12467, 1992 Del. Ch. LEXIS 80, at *31 (Del. Ch. Apr. 6, 1992); *see also In re*

*PNB Holding Co. S'holders Litig.*, Consol. C.A. No. 28-N, 2006 Del. Ch. LEXIS 158, at *59 (Del. Ch. Aug. 18, 2006) (holding that "the key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company.").

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standard for Preliminary Approval of Class Action Settlement

Plaintiffs request the Court to grant preliminary approval of the Settlement. "Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *16-17 (D.S.C. June 22, 2012). "In assessing the fairness and adequacy of a proposed settlement, there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (internal quotation marks omitted).

### B.    The Settlement Falls Within the Range of Possible Approval and Should Be Preliminarily Approved

It is a fundamental tenet of corporate law that stockholders are entitled to be fully informed of all material facts concerning transactions requiring their approval. *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) ("[D]irectors of . . . corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action."). Here, Plaintiffs alleges that Colony Capital stockholders were not fully informed, and as a result, were unable to judge the fairness of the Merger. Plaintiffs' prosecution and resulting

settlement efforts resulted in Colony Capital making significant supplemental disclosures, which allowed stockholders to make an informed decision regarding the Merger.

There is no information more material to stockholders than the actual and/or estimated value of their holdings in the company, and the board's financial advisor's evaluation of this value. *See Netsmart*, 924 A.2d at 203-04. In the context of a merger transaction, which would automatically convert the outstanding shares into a right to receive cash, the valuation exercises performed by the financial advisor in its fairness opinion figure "prominently in a shareholder's decision where she would receive cash in exchange for her shares." *David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *29 (Del. Ch. June 27, 2008). Here, the Registration Statement omitted critical data and inputs used by the Financial Advisors in rendering their respective fairness opinions. The Supplemental Disclosures provided the omitted information, and thus, allowed the Settlement Class Members in each of the three related cases to evaluate the Financial Advisors' respective fairness opinions adequately before deciding to vote in favor or against the Merger. The information provided in the Supplemental Disclosures was material to Colony Capital stockholders, NSAM stockholders and NRF stockholders because the valuation analyses performed in the fairness opinion of a financial advisor figure prominently in a stockholder's ultimate decision. *Id.*

In light of the benefits obtained from the Supplemental Disclosures, and the fact that Colony Capital would not have disclosed said material information absent Plaintiffs' efforts in this Action, the Settlement clearly outweighs the risks, delay, and uncertainties of further litigation. Thus, the Settlement clearly falls within the range of possible approval and should be preliminarily approved by the Court.

# IV. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER

Plaintiffs seeks certification of a non-opt-out class in each of these three related cases consisting of all record and/or beneficial holders of common stock of Colony Capital who held such stock at any time during the period beginning on and including May 16, 2016, through and including December 20, 2016 (the date of consummation of the Merger), including any and all of their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, beneficiaries, legates, devisees, assigns and transferees, immediate and remote, and any other person or entity acting for or on behalf of, or claiming under, any of the foregoing, but excluding Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors in interest thereto.

Courts in the Fourth Circuit "should 'give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989)). Under Rule 23, a plaintiff must establish the requirements under Federal Rule of Civil Procedure 23(a) as well as demonstrate that the action may be maintained under one of the three subsections of Rule 23(b). *See Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 345-46 (D. Md. 2012). In this case, the Parties assert that for settlement purposes only, the requirements of Rule 23(a) and (b)(3) have been satisfied.

## A. The Proposed Settlement Classes Satisfy Rule 23(a) of the Federal Rules of Civil Procedure

To certify a class under Federal Rule of Civil Procedure 23(a), the court must find that: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of

law or facts common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 620-21 (1997).

The proposed class must be "so numerous that joinder of all members is impracticable" in order to satisfy the numerosity requirement. Fed. R. Civ. P. 23(a)(1). The proposed Settlement class includes all record and beneficial owners of Colony Capital common stock who held any such shares at any time between May 16, 2016 and December 20, 2016, the date of consummation of the Merger. Plaintiffs allege that as of August 5, 2016 there were over 113 million outstanding shares of Colony common stock outstanding. Thus, the numerosity requirement is satisfied here.

Commonality requires "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal quotation marks omitted). Here, Plaintiffs alleged that Defendants caused the materially misleading and incomplete S-4 to be disseminated to the stockholders of Colony Capital, which prevented those stockholders from making an informed decision about the Merger. Thus, the commonality requirement is met here.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality is satisfied as long as the class representative's claims are not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). Because Plaintiffs' allegations relate to

uniform misrepresentations and omissions of material facts disseminated to all Colony Capital stockholders, Plaintiffs' claims are typical of the Settlement Class here.

In order to establish that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), the named class representative must show to the Court that the representative and the unnamed members of the class have common interests and that the named representative will vigorously prosecute the interests of the class through qualified counsel. *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007). Here both elements are satisfied. As noted above, Plaintiffs' interests are aligned with the Settlement Class Members, and Plaintiffs have acted in the best interests of the Settlement Class. Further, Plaintiffs have vigorously prosecuted this Action and is represented by experienced counsel who have a successfully track record of prosecuting securities class actions.

**B.    The Proposed Settlement Classes Satisfy Rule 23(b) of the Federal Rules of Civil Procedure**

In addition to satisfying Rule 23(a), the proposed Settlement Classes also satisfy both Rule 23(b)(1) and Rule 23(b)(2). Under Rule 23(b)(1), class certification is proper "if prosecuting separate actions by or against individual class members would create a risk of [] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). Here, individual adjudications could lead to differing rulings regarding the fairness of the Merger and whether Colony Capital's stockholders were able to make an informed decision. *See, e.g.*, *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *25 (D.N.J. Mar. 26, 2010) ("[T]here is significant risk that [Defendants] will be exposed to differing standards of conduct with respect to a group that is owed a duty of uniform treatment

pursuant to applicable securities laws and regulations as well as fiduciary obligations."). Thus, Rule 23(b)(1) is satisfied here.

Under Rule 23(b)(2), class certification is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is typically reserved for situations, such as here, where Plaintiffs are not seeking money damages. *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D 539, 563 (D.S.C. 2000). As mentioned above, Defendants have acted on grounds that apply to the Settlement Class as a whole because the Merger affected all Settlement Class Members in the same way. Further, the Settlement Class Members equally benefitted from the basis of the Settlement, the Supplemental Disclosures. Thus, the Settlement Class should be certified under Rules 23(b)(1) and 23(b)(2).

## V.     THE PROPOSED NOTICE TO THE CLASS MEMBERS IS ADEQUATE

The Court should approve the Settling Parties' proposed form of Notice and direct that it be sent to Settlement Class Members by First Class Mail.[5] Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Further, the notice must be drafted in plain and easily understood language that clearly and concisely describes: (i) the nature of the Action and the claims alleged in the Action; (ii) the definition of the Settlement Class; (iii) the terms of the Proposed Settlement; and (iv) the reasons for the Settlement. Here, within thirty days of the entry of an Order by the Court preliminarily approving the Settlement, Colony Capital shall cause a copy of the Notice to

---

[5]     "Notice" refers to the Notice of Pendency and Potential Settlement of Class Action Settlement attached as Exhibit C to the Stipulation. *See supra* n.3.

be mailed to all members of the Settlement Class who can be identified with reasonable effort. *See* Stipulation ¶ 2.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiffs request that the Court establish: (i) the date by which Colony Capital will provide Notice of the Settlement to the members of the Settlement Class; (ii) the date by which Settlement Class Members may object to the Settlement; and (iii) the date of the Settlement Hearing. Plaintiffs propose the following schedule, which is similar to those used in numerous class action settlements and provides due process to Settlement Class Members with respect to their rights concerning the Settlement:

| | |
|---|---|
| Notice mailed to Settlement Class Members | Thirty days of entry of the Preliminary Order |
| Date by which counsel must file papers in support of Settlement and award of attorneys' fees and expenses | Twenty-one calendar days prior to the Settlement Hearing |
| Last day for Settlement Class Members to object to the Settlement | Fourteen calendar days prior to the Settlement Hearing |
| Date by which counsel must file papers in response to any objections by Settlement Class Members | Five calendar days prior to the Settlement Hearing |

## VII.   CONCLUSION

The Settlement achieved is a good and fair compromise of contested claims and the Supplemental Disclosures achieved a significant benefit to shareholders. This settlement avoids the risks and delays inherent in litigation, and the expenses of proceeding with litigation and ultimately to trial. Accordingly, Plaintiffs respectfully submit that the Settlement clearly falls within the range of being fair, reasonable, and adequate and should be preliminarily approved by the Court.

Dated: June 30, 2017

**BROWER PIVEN, A Professional Corporation**

/s/ Yelena Trepetin
Charles J. Piven (Md. Fed. Bar No. 00967)
Yelena Trepetin (Md. Fed. Bar No. 28706)
1925 Old Valley Road
Stevenson, MD 21153
Tel: (410) 332-0030
Fax: (410) 685-1300
piven@browerpiven.com
trepetin@browerpiven.com

*Attorneys for Plaintiffs William Carter, Jack
Boothe and Cindy Kessler*

Juan E. Monteverde (pro hac vice)
**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 971-1341
jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff William Carter*

Nadeem Faruqi
James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
nfaruqi@faruqilaw.com
jwilson@faruqilaw.com

*Attorneys for Plaintiff Jack Boothe*

Guri Ademi
Shpetim Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Ave.
Cudahy, WI 53110
Tel: (414) 482 -8000

Fax: (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com

*Attorneys for Plaintiff Cindy Kessler*